1   JAMES H. TURKEN (SBN 89618)
    turkenj@dicksteinshapiro.com
2   JOHN L. TUELL (SBN 208808)
    tuellj@dicksteinshapiro.com
3   DICKSTEIN SHAPIRO LLP
    2049 Century Park East, Suite 700
4   Los Angeles, CA 90067-3109
    Telephone: (310) 772-8300
5   Facsimile: (310) 772-8301

6   Attorneys for Defendant

7   MEDJET ASSISTANCE, L.L.C.

8                   UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10

11

12  BETH FRIEDMAN, an individual,      Case No:  CV09-07585-MMM
                                       (VBKx)
13                  Plaintiff,         Hon. Margaret M. Morrow
            vs.
14                                     **DEFENDANT'S OPPOSITION TO**
15  MEDJET ASSISTANCE, L.L.C.,         **PLAINTIFF'S MOTION *IN LIMINE***
    an Alabama corporation, and        **TO EXCLUDE OPINIONS OF BRUCE**
16  DOES 1-20,                         **HODGSON**
17                  Defendants.
18                                     Date:  November 8, 2010
                                       Time:  10:00 a.m.
19                                     Courtroom:  780 (Roybal)
20
                                       Complaint Filed:  September 11, 2009
21                                     Trial:  January 11, 2011
22

23

24

25

26

27

                                      1

1  Defendant Medjet Assistance, L.L.C. ("Medjet") hereby respectfully
2  submits its opposition to Plaintiff Beth Friedman's ("Plaintiff") Motion *In*
3  *Limine* to Exclude Opinions of Bruce Hodgson, as follows[1]:

4  **I.   INTRODUCTION**

5  Internationally recognized spinal surgeon Mr. Bruce Hodgson is the only
6  physician on the planet with first-hand knowledge of Wesley Friedman's
7  condition during the critical days between his skiing accident and his departure
8  for Los Angeles.  As Wesley's treating physician, Mr. Hodgson was uniquely
9  qualified to advise Medjet and its consulting physicians regarding whether
10 Wesley's condition permitted transport by commercial airline or whether
11 Wesley required medivac transport.  Based upon his more than 20 years of
12 experience as a spinal surgeon and his first-hand knowledge of Wesley's
13 condition, Mr. Hodgson concluded that Wesley was more than capable of
14 travelling commercially with a medical escort and so advised Medjet and its
15 consulting physicians.  Mr. Hodgson's recommendations are preserved in the
16 form of voice recordings obtained (by Plaintiff) from Stat Medevac and in
17 Medjet's written business records.

18 Plaintiff is so intent on trying to keep Mr. Hodgson's words from the jury
19 that she appears willing to ignore, contradict and defy her own pleadings and
20 the findings of this Court.  Specifically, Plaintiff now claims in her Motion *In*
21 *Limine* that Mr. Hodgson's "opinions" are inadmissible hearsay that "***had*** no
22 effect" on Medjet's decisions with respect to Plaintiff's son "because Medjet
23 ***made*** no decisions." (Motion, p. 7.)  In taking a complete 180 degree turn away
24 from her previous (and the Court's current) position, however, Plaintiff has
25 unwittingly created a logical paradox; namely, if Medjet never made any
26 decisions, why did Plaintiff sue Medjet in the first place?  Indeed, if Medjet

27 ───────────────
[1] Most if not all of the issues raised by Plaintiff's Motion were briefed in
28 connection with Medjet's Motion for Summary Judgment and discussed in the
Court's Tentative Order thereon.

2

1    never made any decisions, how could it possibly have breached its agreement
2    with Plaintiff?

3        Truth be told, Plaintiff's desperate attempt to exclude Mr. Hodgson's
4    words from the trial is a testament to just how relevant and "effective" those
5    words were and likely will be – both to Medjet's decision in August 2009 and to
6    the jury's decision in January 2011.  Plaintiff's Motion should be denied.

7    **II.  MR. HODGSON'S STATEMENTS ARE ADMISSIBLE**

8        In her First Amended Complaint,[2] Plaintiff alleges that "Medjet delayed in
9    making a decision whether Medjet would arrange for medical transport of
10   [Plaintiff's] son" and ultimately "refused to transport Plaintiff's son to Los
11   Angeles via medivac." (FAC, p. 3.)  In her Opposition to Medjet's Motion for
12   Summary Judgment, Plaintiff argued that "Medjet violated its own stated
13   procedure . . . by declining medical transport without basing its *decision* on
14   medical review." (Opp., p. 8.) [Emphasis added.]  Plaintiff also argued in her
15   Opposition that Medjet "violated its own contractual rules for making the key
16   determination" (Opp., p. 19) and that Medjet "violated its own criteria" by
17   "having Gobbels rather than the medical staff make the decision." (Opp., p.
18   20.)

19       Now, notwithstanding her prior allegations (and arguments) and this
20   Court's ruling that Mr. Hodgson's statements "are admissible because they are
21   offered for the purpose of proving their effect on the listener" and because they
22   relate directly to Medjet's "*decision* to offer to transport Wesley via commercial
23   airline with a medical escort," Plaintiff claims that Mr. Hodgson's statements
24   could not have affected Medjet's decision because Medjet never made any
25   decisions.

26       In support of this ruse, Plaintiff twists the deposition testimony of Jeff

27   ---
[2] Notably, Plaintiff's First Amended Complaint was filed months after the
28   depositions of Jeff Sayers and John Gobbels, on whose testimony purports to base
her newly-minted (and utterly illogical) argument that Medjet made no "decisions."

3

1  Sayers and John Gobbels and attempts to obliterate the critical distinction
2  between the physicians' "determination" regarding the most appropriate means
3  of transport, which is based on their evaluation of the member's condition, and
4  Medjet's "decision" whether to transport a member by medivac jet or
5  commercial airline which, as Mr. Gobbels explained, is made after (and
6  consistent with) "the recommendations of the physicians involved."  (Supp.
7  Decl. of John Gobbels in Support of Medjet's MSJ, ¶ 2.)  Simply stated, Medjet
8  (wisely) relies on the recommendations of the physicians involved in deciding
9  whether (and when) to dispatch a medivac jet or arrange for commercial
10 transport with a medical escort.

11     In this case, the only physician with first-hand knowledge of Wesley's
12 condition was Mr. Hodgson, and Mr. Hodgson's recommendations had a
13 profound (and, ultimately, conclusive) effect on Medjet's transport decision.
14 Indeed, the Court noted the following exchange in its Tentative Order on
15 Medjet's MSJ:

16     Gobbels advised Friedman that he had called Hodgson again
17     to "make sure . . . that we didn't miss something and . . . *to make*
18     *sure that we are making the right decision* for [Wesley] medically,
19     you know, versus the convenience standpoint . . . .  And – and after
20     speaking with [Hodgson] again, we feel that-that medically, he
21     doesn't require a critical care team or a private aircraft.  So we
22     would be certainly more than willing to [provide] you with a critical
23     care nurse and a medical escort to bring both of you guys back
24     comfortably and commercially as most expeditiously as we can
25     without . . . the possibility of delays."  (Tentative Order, p. 13.)[3]
26
27 [3] The Court also noted that "Medjet has adduced evidence that, *at the time it made*
   *its decision*, the UPMC consulting physicians and Wesley's treating physician,
28 Hodgson, concurred that Wesley's condition did permit commercial transport."
   (Tentative Order, p. 19.) [Emphasis added.]

4

1   [Emphasis added.]

2   It is difficult to imagine an instance where the statements at issue had a more

3   direct effect on the listener.  Plaintiff's Motion should be denied.

4   **III.   MR. HODGSON'S STATEMENTS ARE RELEVANT**

5   Next, Plaintiff half-heartedly argues that Mr. Hodgson's statements are

6   irrelevant because "what either Mr. Hodgson or Medjet believed is irrelevant to

7   whether Medjet breached its contract" and cites *Applied Equipment Corp. v.*

8   *Litton Saudi Arabia LTD.* for the proposition that "[T]he breaching party's

9   motive or state of mind is irrelevant to whether a breach occurred." (Motion, p.

10  7.)  That case says no such thing.  In fact, the Court in A*pplied Equipment* held

11  that "the motive of a breaching party generally has no bearing on the **scope of**

12  **damages** that the injured party can recover for the breach of the implied

13  covenant [of good faith and fair dealing]" and that "motives . . . cannot be

14  inquired into **on the question of compensatory damages**."  7 Cal.4th at 516.

15  [Emphasis added.]  The Court made no findings whatsoever regarding whether

16  "motive or state of mind" is relevant to whether a breach occurred.

17  In this case, Medjet had an agreement with Plaintiff to provide medivac

18  transport or, if the member's condition permitted, transport by scheduled

19  commercial airline with a medical escort.   In order to perform under its

20  agreement with Plaintiff, Medjet necessarily had to decide whether to dispatch a

21  medivac aircraft or schedule an escorted commercial flight.  In order to make

22  that decision, Medjet necessarily consulted with Mr. Hodgson and the doctors at

23  UPMC.  It is thus inconceivable that Mr. Hodgson's statements (and the effect

24  those statements had on Medjet) were irrelevant to Medjet's performance under

25  its agreement with Plaintiff.  Plaintiff's Motion should be denied.

26  **IV.   MR. HODGSON'S STATEMENTS SHOULD NOT BE EXCLUDED**

27  **UNDER RULE 403**

28  Finally, Plaintiff argues that Mr. Hodgson's statements should be

5

1   excluded because "[T]here is no limiting instruction that would enable a jury to
2   parse the permissible, as opposed to the impermissible uses, of Mr. Hodgson's
3   statements regarding transport of Wesley Friedman on a commercial aircraft."
4   (Motion, p. 8.)  Interestingly, Plaintiff's argument appears to concede that there
5   are "permissible" uses for Mr. Hodgson's statements; otherwise, by definition,
6   there would be nothing for the jury to "parse" at all.  In fact, all of Mr.
7   Hodgson's statements are "permissible" and, indeed, quite damaging to
8   Plaintiff's claims in this case, which is precisely why Plaintiff wants so
9   desperately to exclude them.

10          In any event, Rule 403 does not authorize a court to exclude evidence
11   simply because it is damaging to a party's claims.  Rather, Rule 403 applies
12   only to evidence whose "probative value is substantially outweighed by the
13   danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ."
14   Given the issues in this case, Mr. Hodgson's statements regarding Wesley's
15   condition could well be the most probative evidence introduced at trial.  Indeed,
16   excluding Mr. Hodgson's statements is infinitely more likely to "confuse the
17   issues" and "mislead the jury" than including them.  Plaintiff's Motion should
18   be denied.

19   **V.      CONCLUSION**

20          For all the foregoing reasons, Plaintiff's Motion *In Limine* to Exclude
21   Opinions of Bruce Hodgson should be denied.

22
23   DATED:  October 18, 2010          DICKSTEIN SHAPIRO LLP
24
25                                     By: _____
26                                         James H. Turken
                                           John L. Tuell
27                                     Attorneys for Defendant MEDJET
                                       ASSISTANCE, L.L.C.
28

6